## WESTERN PAVING CO. v. BOARD OF COM'RS OF LINCOLN COUNTY et al.

No. 27215. May 10, 1938.

Rehearing Denied July 26, 1938.

T. G. Chambers, G. A. Paul, and Shirk, Danner & Earnheart, for plaintiff in error.

Bill Vassar, County Atty., Joe Young, Asst. County Atty., and W. L. Johnson, for defendants in error.

RILEY, J. This is an action by the Western Paving Company against the board of county commissioners of Lincoln county to recover for gravel furnished for construction of certain highways in Lincoln county. From a judgment on opening statement of counsel, plaintiff brings this appeal.

The parties will be referred to as they appeared below.

In 1927, the citizens of Lincoln county authorized the issuance of $1,200,000 in bonds, $300,000 of which was to be expended on the construction of certain county highways designated in the proclamation.

The instant case is the last in a series of five actions involving plaintiff's right of recovery. The plea of res adjudicata is raised herein, and for the sake of clarity the preceding four actions will be considered in chronological order.

On June 2, 1928, D. P. Elsey, a taxpayer of Lincoln county, filed petition in cause No. 9875 against the county commissioners, alleging that the county commissioners had let an illegal contract for the purchase of approximately 45,000 tons of gravel from the Western Paving Company; that the gravel furnished under the contract was of an inferior grade and not in compliance with specifications; that the Western Paving Company had delivered certain quantities of gravel and filed a claim therefor in the amount of $11,306.82. Plaintiff prayed a temporary order restraining the commissioners from receiving more gravel and from allowing the above claim. On June

13, 1928, Western Paving Company intervened, and after hearing testimony, the court found that the board of county commissioners had not proceeded as provided by section 12, ch. 48, S. L. 1923-24; that the contract was invalid; and the court temporarily enjoined the commissioners from receiving more materials or paying any moneys from county funds pending further hearing.

The court also found that the warrant for $11,301.05, in payment of materials furnished to June 1, 1928, had been issued prior to the hearing and could not be recalled in an injunction suit.

On May 13, 1930, Western Paving Company filed an amended answer setting up the contract, acceptance of gravel, issuance of warrant, and prayed vacation of temporary injunction and that upon hearing the county treasurer be ordered to pay purchase price of gravel.

On May 23, 1930, plaintiff filed a reply to the amended answer alleging the matters sought to be determined by defendant's amended answer were fully adjudicated by the court in cause No. 10473, in the meantime, wherein a writ of mandamus against the county treasurer sought by Western Paving Company to compel payment of the warrant was denied. It also alleged the contract had been rescinded by county commissioners and the question had become moot and litigation had ceased between original parties.

On June 23, 1930, the case No. 9875 was tried. Motion to dismiss the cause by county commissioners was denied, but a demurrer to plaintiff's evidence was sustained for the reason there were no threatened acts to be enjoined and the question was moot. It was further ordered "* * * that in the sustaining of the demurrer to the evidence the same shall be without prejudice to either party." No notice of appeal was given.

On October 15, 1928, the Western Paving Company filed its second case, No. 10027, against Paul Prince, county treasurer of Lincoln county, Okla., and prayed for a writ of mandamus compelling defendant to pay said warrant.

On November 23, 1929, the court dismissed the action because Paul Prince was no longer county treasurer and denied Western Paving Company's application to substitute the incumbent county treasurer. No appeal was taken.

On the same day, the Western Paving Company instituted the third case, No. 10-473, against Floyd Soderstrom, incumbent county treasurer of Lincoln county, wherein it sought a writ of mandamus to compel the treasurer to pay said warrant. Soderstrom responded. D. P. Elsey intervened and filed an answer. The matters pleaded and the issues formed thereby are hereinafter set out.

On December 21, 1929, the court, after hearing the testimony and the argument of counsel, denied the writ of mandamus and dismissed the cause.

Motion for new trial was overruled, notice of appeal given, time for preparation of case-made granted, but no further proceedings were had.

On February 21, 1931, the Western Paving Company filed the fourth case, No. 10-836, against Floyd Soderstrom, treasurer of Lincoln county, alleging matters identical with those in its petition in cause No. 10-473, with an additional allegation "* * * that there is no order or decree of court to prevent the defendant from paying said warrant."

The responses of Soderstrom and Elsey, intervener, were substantially the same as in cause No. 10473, except that in addition they pleaded the latter cause as a final adjudication of the issues involved.

On March 9, 1931, the cause was tried to the court and defendant's demurrer to the evidence was sustained. Motion for new trial was overruled, notice of appeal given, but no further proceedings were had.

On March 20, 1931, the Western Paving Company filed cause No. 10867, the instant case, against the board of county commissioners of Lincoln county. Plaintiff pleads the contract with the county commissioners, delivery of the gravel, its acceptance, issuance of a warrant in the amount of $11,-301.05, and nonpayment thereof.

Plaintiff then alleges in the alternative that if it be determined the defendant failed to act in strict conformity with the provisions of law relative to entering into the contract, then the county, having received the benefit of the gravel, was liable for the reasonable value thereof, which was alleged to be $2.06 per ton, the contract price.

Plaintiff joined a second cause of action whereby it sought to recover $2,357.81 for gravel furnished subsequent to that included in the $11,301.05 claim. Plaintiff did not allege that a claim for this sum had ever been filed with or approved by the board of county commissioners.

In the two causes of action plaintiff seeks a total judgment, including interest, of $17,483.30.

D. P. Elsey again intervened alleging the plaintiff was bound and estopped by the judgment in cause No. 9875; that the contract was rescinded by the county commissioners following granting of temporary injunction in cause No. 9875; that in causes Nos. 10027 and 10836, the matters alleged in plaintiff's petition had been fully determined and adjudicated or could have been fully heard and adjudicated.

Defendant, board of county commissioners, filed substantially the same answer as that of the intervener.

The case was set for trial December 5, 1935; defendant moved for judgment on plaintiff's opening statement. The intervener joined in the motion. Ruling thereon was reserved until after introduction of all the proceedings in causes Nos. 9875, 10027, 10-473, and 10826. Thereafter the court sustained the motion of defendant and rendered judgment for the defendant and intervener.

Plaintiff predicates this appeal upon three grounds, the first of which is that the granting of a temporary injunction as in case No. 9875 rests in the sound and reasonable discretion of the court, and that the order in reference thereto is not such a final adjudication as would estop the plaintiff from again raising any issue involved therein. With this we agree.

In Brown v. Donnelly, 19 Okla. 296, 91 P. 859, syllabus No. 3, it was said:

"All orders made by a district court or a judge thereof, on a hearing for a temporary injunction or on a motion to dissolve the same, in so far as they affect the subject in controversy, are only temporary, and may be modified in the final judgment, giving to the respective parties that order or judgment which the rules of equity require."

The applicable rule is found in 34 C. J. 770, wherein it is stated:

"A judgment cannot be set up in bar of a subsequent action unless it was a final determination on the merits, adjudicating the right of the litigants in a conclusive and definitive manner."

On the final hearing in No. 9875, a demurrer to plaintiff's evidence was sustained on the ground the evidence did not disclose any acts to be enjoined and the cause was moot. This was not such a final determination of the validity of the contract as would sustain a plea of res adjudicata.

Plaintiff next contends:

"Mandamus is not a writ of right, but one resting within sound discretion, and writ of mandamus will not be awarded when right to relief sought is not clear, for which law provides no adequate remedy. Therefore, denial of writ of mandamus sought in cases Nos. 10027, 10473, and 10836 cannot be considered as res adjudicata or as estoppel to plaintiff's present action on its contract, which is a different cause of action, because it does not affirmatively appear that the legality of its contract, the approval and acceptance of the material furnished thereunder, was necessarily determined in such action."

Under the view we take of this case, a consideration of the effect of the judgment in No. 10473 will dispose of this appeal.

In the journal entry of judgment is found the following:

"* * * and the court after hearing the testimony, and the argument of counsel and being fully advised in the premises, finds that the application for peremptory writ should be denied, and the cause dismissed. * * *"

The question then becomes, What issues were adjudicated by the above judgment? Our answer must be reached under the rule stated in Miller et al. v. Madigan, 90 Okla. 17, 215 P. 742:

"In determining what issues have become res adjudicata, the inquiry is not limited to the formal judgment, it extends to the judgment roll, including the pleadings, the verdict, or the findings, and the full scope and meaning of the judgment is often determined by the pleadings, verdict, or findings."

In the case of Block v. Commissioners, 99 U. S. 686, wherein it was sought to recover on coupons of bonds after mandamus to compel payment thereof had been denied, it was averred in defense that the invalidity of the bonds had been determined in the mandamus suit. The order denying the writ did not affirmatively show that the invalidity of the bonds had been determined. After analyzing the pleadings, the court held:

"* * * The only issue tendered and the only issue tried was that tendered by the answer, namely, that the bonds and coupons were unauthorized by law. * * * It is certain that a judgment of a court of competent jurisdiction is everywhere conclusive evidence of every fact upon which it must necessarily have been founded. * * *"

In case No. 10473, plaintiff pleaded the contract and alleged compliance therewith, delivery and use of gravel, filing of claim therefor, its approval, and issuance of warrant No. 515 in payment thereof, ample

funds from which warrant could legally be paid; refusal of county treasurer to perform ministerial duty of payment in accordance with order of board of commissioners; and prayed a writ of mandamus to compel its payment.

Defendant and intervener in their responses admitted the execution of the contract by plaintiff and the county commissioners, issuance of warrant No. 515, and the availability of funds for payment. They allege, however, that: (1) The contract is invalid because not let in accordance with law; (2) that the gravel furnished was not in accordance with the specifications under the contract, but was inferior and unfit for use and furnished and accepted by fraudulent collusion between the plaintiff and the board of county commissioners; and (3) that on the hearing for the temporary injunction in No. 9875, the court adjudged said contract null and void, and said judgment, which was not appealed, had become final, and Western Paving Company was thereby estopped from maintaining action for mandamus.

Under the allegations of the petition and the admissions in the responses, the plaintiff was clearly entitled to a writ of mandamus unless the contract was invalid. The writ, then, of necessity, was denied because of one of the three issues raised by the response. If its denial was based upon either or both the invalidity of the contract or the ground of fraudulent and collusive noncompliance therewith, the judgment was such an adjudication as would support the plea of res adjudicata in the present case.

We have held in deciding plaintiff's proposition No. 1, above, that the judgment of the court granting the temporary injunction in cause No. 9875 was not a final determination of an issue such as would support a plea of res adjudicata in a subsequent proceeding.

The court has long and consistently followed the rule that:

"Where a case is tried to the court without a jury, and the court makes no special findings of fact, a general finding in favor of plaintiff includes a finding of every fact necessary to support the judgment." Walker et al. v. Holmes, 91 Okla. 64, 215 P. 1067.

Also in Asher et al. v. Doyle, 50 Okla. 460, 150 P. 878, it was said:

"Every presumption is in favor of the correctness of the judgment of the court, and it will not be disturbed unless it is made to affirmatively appear that it is erroneous."

Where a general judgment may have been based upon two or more grounds, one of which would be erroneous, and the others proper, it is presumed the judgment was based upon the proper grounds.

The writ of mandamus in cause No. 10473, under this construction, was denied because the court found the contract invalid or found fraudulent and collusive noncompliance. A final order based upon either ground would constitute a judgment on the merits and when pleaded as res adjudicata would defeat recovery in this action between the parties.

In reaching the above conclusion, we are not unmindful of the case of Territory ex rel. Miller v. Hewitt, Treasurer, 5 Okla. 167, 49 P. 60, wherein certain warrants were drawn upon the general fund of the board of education of the city of Guthrie. Outstanding and unpaid warrants, issued prior to those of plaintiff, amounted to $9,200, and funds in possession of the treasurer on the date the application for mandamus was filed amounted to $3,335. Respondent averred the holders of prior warrants were demanding payment, and that respondent had filed a suit in district court in the nature of an interplea for determination of the priorities of the various warrant holders, including the relator. The court denied mandamus and cited three Kansas cases hereinafter considered which hold that a plain and adequate remedy exists at law by action upon the treasurer's bond. In concluding, the court said:

"In the case now under consideration, in which there is a conflict between the claims sued upon here and other claimants for the same fund in the hands of respondent, the reason exists with still greater force that the relator should be remitted to his remedy at law."

In State ex rel. Meier v. McCrillus, 4 Kan. 250, the county of Leavenworth had issued $250 in payment for 5,000 shares of stock in a railroad company which was constructing a road into the county. Relator, owner of some of the bonds, sought a writ of mandamus against the county treasurer to compel payment of the principal and interest of some matured bonds. Respondent had collected sufficient money to make payment, but contended the bonds were invalid. The court held that a plain and adequate remedy existed at law in a suit on the treasurer's bond, and denied mandamus.

In State ex rel. Elsbree v. Bridgman, 8 Kan. 458, relator sought mandamus against the county treasurer to compel payment of certain warrants from the proceeds of a

bond issue voted for that specific purpose. Ample funds were in possession of the respondent, but he refused payment on the ground the bond issue was illegal. Mandamus was denied on authority of the McCrillus Case, supra.

In Byington v. Hamilton, Treas., 37 Kan. 758, 16 P. 54, the plaintiff sought mandamus to compel repayment by county treasurer of money paid for void tax sale certificate. The writ was granted only because of a stipulation by the parties, otherwise the court said the writ would be denied under the rule announced in the McCrillus and Bridgman Cases, supra.

It will be noted that in each of the Kansas cases relator sought to compel payment from a special fund, and that ample funds were available. In the Hewitt Case payment was sought from a general fund and there was such a serious question of sufficiency of funds that respondent had filed an action to determine priorities of the various claimants, many of whom were not before the court.

So far as we have been able to ascertain, Alabama is the only other state holding that a suit on the treasurer's bond is an adequate and sufficient remedy at law. An Alabama statute so provides. But even in Alabama, if payment is to be made of a special claim from a special fund, mandamus is granted. Sessions v. Boykin, 78 Ala. 328. In Wyker v. Francis, 120 Ala. 509, 24 So. 895, mandamus was permitted even though the claim was against the general fund.

In the case of Hasty, Judge, v. Marengo County Bank, 204 Ala. 229, 86 So. 37, is found this statement:

"* * * It has been recently held * * * that the summary remedy given by the statute against the county treasurer could not be invoked against a county depositary. * * * This therefore removes the only reason against the remedy by mandamus. * * *"

See, also, State ex rel. Nolen v. Nelson, 310 Mo. 527, 275 S. W. 927; Treas. of Jefferson County v. Shannon, 51 Pa. 221; Gamble v. Clark (Ga.) 19 S. E. 54; Board of Co. Com'rs v. Sims (Colo.) 74 P. 457.

Under certain facts the Ohio court holds that an action on the treasurer's bond is inadequate. State v. Staley, 38 Ohio St. 259. The North Carolina court permits the holder of a county warrant to sue on the treasurer's bond or apply for mandamus.

This court questioned the doctrine of the Hewitt Case, supra, in Hopley, Treas., v. Benton, 38 Okla. 224, 132 P. 808, wherein Hayes, C. J., used this language:

"It has been asserted by some of the text writers that the weight of authority supports a rule contrary to the one laid down in the Hewitt Case. * * *"

As we understand the facts of the Kansas cases, mandamus was there sought to compel payment from special funds only, and therefore they are not direct authority for the Hewitt Case, wherein payment was sought from a general fund. Apparently the question of compelling the payment of a warrant from a special fund in the hands of a county treasurer has not heretofore been raised in this jurisdiction.

This court has held that mandamus will lie to compel payment of a warrant by the State Treasurer in Bryan v. Menefee, State Treas., 21 Okla. 1, 95 P. 471, and in Dunlop, State Treas., v. Wilkin-Hale State Bk., 67 Okla. 128, 169 P. 893.

It is difficult to reconcile these two cases with the Hewitt Case except on the special or appropriated fund doctrine, because an action could be maintained against the State Treasurer on his bond under authority of section 95, O. S. 1931, which reads as follows:

"When an officer, executor or administrator within this state, by misconduct or neglect of duty, forfeits his bond or renders his sureties liable, any person injured thereby, or who is, by law, entitled to the benefit of the security, may bring an action thereon in his own name, against the officer, executor or administrator and his sureties, to recover the amount to which he may be entitled by reason of the delinquency. The action may be instituted and proceeded in on a certified copy of the bond, which copy shall be furnished by the person holding the original thereof."

Also, in McGee, Co. Treas., v. School Dist. No. 196, Comanche County, 82 Okla. 18, 198 P. 61, mandamus was allowed to compel the county treasurer to pay to one school district money in his possession due and owing from another district.

We are unwilling to follow the above-cited Kansas case wherein they deny mandamus to compel payment of a warrant from a fund created for a special purpose such as the proceeds of a bond issue. We believe the doctrine of the Hewitt Case should be limited to the facts therein recited, namely, where payment is sought from a general fund of the municipality which has not been definitely appropriated for some particular purpose. Of course, when so

limited, the Hewitt Case has little importance in Oklahoma, where even money in the general fund of the various municipal subdivisions must be definitely appropriated for a particular purpose in their annual budgets.

We believe that mandamus should be granted to compel a treasurer to pay a warrant legally and properly drawn upon an existing fund in his possession which has been set aside and appropriated for that purpose. Such a rule is not only supported by the weight of authority, but is based upon the better reason.

In the instant case the county had created a special fund by voting a bond issue and funds were available for payment of the warrant. The treasurer apparently considered the contract with the Western Paving Company invalid because of the expression of the trial court to that effect at the hearing of the application for a temporary injunction and the subsequent action of the board of county commissioners whereby the contract was rescinded and a new one granted to Western Paving Company. He refused to pay said warrant in the amount of $11,301.05. In doing so he was acting to protect the public interest. A treasurer should be encouraged in such an attitude. To refuse mandamus and require a claimant to sue the treasurer on his bond compels a treasurer to determine at his peril the validity of such a warrant. If he honestly, but improperly, refused payment, he would be liable in a suit upon his bond in an action by the warrant holder. Likewise, if he honestly, but illegally, paid a warrant, he would be liable in a suit upon his bond by the county. We are unwilling to extend this doctrine to the facts in this case.

The question of the legality of a warrant can be raised in the respondent's return and determined upon hearing of the same. Kilgore v. Swindle, Co. Treas. (Ala.) 122 So. 333; State ex rel. Nolen v. Nelson, Treas. (Mo.) 275 S. W. 927; Treasurer of Jefferson County v. Shannon, 51 Pa. 221; Hodges v. Kauffman, City Treas. (Cal. App.) 273 P. 125; Crawley, Co. Treas., v. Mershon, 61 Ga. 284; Cook v. Treas. of the Town of Peacham, 50 Vt. 231; McGowan v. Ford (Cal.) 40 P. 231; State ex rel. Morris v. Clark, Town Treas. (Minn.) 134 N. W. 129; Cloud v. Town of Sumas (Wash.) 37 P. 305.

Plaintiff's second cause of action is not maintainable because there is no allegation that a claim was filed and allowed or disallowed by the board of county commissioners as provided by section 7670, O. S. 1931.

Judgment affirmed.

OSBORN, C. J., and GIBSON, HURST, and DAVISON, JJ., concur. CORN, J., dissents. BAYLESS, V. C. J., disqualified, not participating. PHELPS, J., not participating. WELCH, J., absent.